UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                        Case No. 12-73024 (reg)

JEFFREY ST. CLAIR and CATHLEEN ST. CLAIR,

                          Debtors.
------------------------------------------------------------------x
CADLES OF GRASSY MEADOWS II, L.L.C.,

                          Plaintiff,        Adv. Proc. No. 13-08044 (reg)

vs.


JEFFREY ST. CLAIR and CATHLEEN ST. CLAIR,

                          Defendants.
------------------------------------------------------------------x

### DECISION AFTER TRIAL

Before the Court is the issue of whether Cadles of Grassy Meadows II, L.L.C.

("Plaintiff"), has satisfied its evidentiary burden in seeking to deny the discharge of Jeffrey St.

Clair ("Mr. St. Clair") and Cathleen St. Clair ("Ms. St. Clair") (collectively "Debtors"). Debtors

were the subject of Rule 2004 subpoenas directing them to produce documents to Plaintiff and

appear at an examination. Alleging that Debtors failed to comply with the Rule 2004 subpoenas

and had filed a false affidavit representing that they had produced all documents in their

possession, Plaintiff commenced this adversary proceeding under 11 U.S.C. § 727 (a)(2); (a)(3);

(a)(4)(A); (a)(4)(B); (a)(4)(D); and (a)(6)(A) to deny Debtors their discharge. In addition

Plaintiff filed a motion for sanctions against Debtors. At a hearing on the sanctions motion, the

Court found that Debtors' conduct was sanctionable and issued an order sanctioning Debtors for

failing to comply with the court-ordered Rule 2004 subpoenas and for filing a false affidavit.

Plaintiff, relying on the Court's sanction order, moved in the adversary proceeding for summary

judgment as to all counts in the complaint.  The Court denied summary judgment since the

sanction order did not find, as required under 11 U.S.C. § 727, that Debtors had acted with

willful or fraudulent intent.  The Court's decision was upheld on appeal.  A trial was held on

April 24, 2014 on the sole issue of whether under 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(6)(A)[1]

Debtors "knowingly and fraudulently" made a false statement to the Court and/or "willfully and

intentionally" refused to obey an order of this Court.  At trial Debtors objected to the admission

of their Rule 2004 examination testimony into evidence.  The Court accepted the testimony for

purposes of trial but asked for supplemental briefs on that issue.

Following the great weight of case law, the Court holds that Debtors' Rule 2004

testimony is admissible in the adversary proceeding.  The Court recognizes the purpose and

scope of a Rule 2004 examination is greater than that of a deposition under the Rules of Civil

Procedure, but that difference alone is insufficient to exclude Rule 2004 testimony.  Debtors

were represented at the Rule 2004 examination by counsel, the examinations were done under

oath and transcribed by a court reporter, and Debtors admitted that the transcript was accurate.

In addition, Debtors were given the opportunity to testify at trial and be cross-examined by their

attorney with considerable leeway given regarding issues outside the scope of the Rule 2004

examination.

Debtors' conduct during every phase of this proceeding demonstrates to the Court that

they acted with willful and fraudulent intent when they submitted a false affidavit and failed to

obey Court orders. The issue of willful and fraudulent intent is the only remaining issue since the

Court has already found—illustrated through a sanction order—that Debtors failed to obey the

Court's orders and filed a false affidavit.  Such intent is inferred from Debtors' overall pattern of

---

[1]      While the original adversary proceeding included six different causes of action under § 727, the
Court's decision is limited to only the two subsections addressed at trial.

delay, obstruction, and their intentional use of false statements and half-truths during the pendency of their case and during trial.  From the beginning of this case Debtors employed a strategy of delay—ignoring deadlines, making last minute requests for additional time, and failing to appear at hearings—and only provided documents when faced with sanctions.  Even then, Debtors withheld numerous important, and relevant, documents which to this day have not been produced.  Mr. St. Clair is a member of the New York bar yet he failed to disclose his employment as a professor of Medgar Evers College and *any* information about his law practice.  At Ms. St. Clair's Rule 2004 examination she also failed to disclose her accountant, her student loans, or any household expenses.

Debtors' excuses—that they made a "good faith" effort, did not know which documents to produce, were not properly advised by their lawyer, and that documents were destroyed by super-storm Sandy—are not credible and are inconsistent with Debtors' testimony and the facts of the case.  There is no evidence that Narissa Joseph ("Ms. Joseph"), Debtors' original bankruptcy counsel, withheld any requests for documents from Debtors.  Absent such evidence an attorney's knowledge is imputed to the client.  In addition, Plaintiff directly provided Debtors with a detailed list of the required documents, and it was Debtors who chose which documents to turn over based on their personal belief of what was required.  Debtors cannot rely on an advice of counsel defense because they never fully disclosed to Ms. Joseph what documents they actually possessed.  Debtors also were not prevented from turning over any documents by super-storm Sandy since the original subpoena request was served over three months before the storm. Additionally, the storm did not destroy all of Debtors' documents, as originally claimed, some were merely damaged.  Debtors took it upon themselves to decide that the damaged documents needed to be discarded, without any discussion with Plaintiff or their own counsel.

3

Furthermore, Debtors' false statements and conduct during the Rule 2004 examination calls into question their credibility. During the Rule 2004 examination Mr. St. Clair said that he did not currently have a website for his legal practice despite its apparent existence at the time the examination took place. Mr. St. Clair also could not say with certainty whether he had prepared a privilege log with respect to documents from his law practice, and even contradicted his own lawyer about whether any documents requested were protected by the attorney-client privilege. The record also demonstrates that Debtors engaged in disrespectful conduct during the Rule 2004 examinations. This conduct is all the more troublesome because Mr. St. Clair is an officer of the court and presumably knows better. Such conduct—when combined with Debtors' pattern of obstruction, implausible excuses, and record of contradictory and untruthful statements—demonstrates both willful and fraudulent intent when Debtors submitted a false affidavit and disobeyed Court orders.

In sum, each individual Debtor through his or her actions has demonstrated the requisite willful and fraudulent intent mandating the denial of Debtors' discharge pursuant to §§ 727(a)(4)(A) and 727(a)(6)(A)

## FACTS

On or about May 11, 2012 Debtors filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. Plaintiff is a judgment creditor of Debtors in the amount of $148,559.55. Mr. St. Clair is a lawyer with his own practice in Brooklyn and is a part-time professor at Medgars Evers College. Rule 2004 Examination of Mr. St. Clair ("Mr. St. Clair Tr.") 25:10-26:16; 35:17-36:8, March 13, 2013. Ms. St. Clair works as a physician's assistant for New York Methodist. Rule 2004 Examination of Ms. St. Clair ("Ms. St. Clair Tr.") 16:14-18 March 14, 2013.

Upon Plaintiff's request, the Court issued an order on June 26, 2012 (the "Discovery Order") directing, via subpoena, that Debtors produce documents and sit for an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  No. 12-73024, dkt 17. The first scheduled date for document production was July 23, 2012 with Debtors scheduled to sit for Rule 2004 examinations on August 6 and 7, 2012.  Joint Pre-Trial Memorandum, Exhibit 3.  Upon Debtors' request, the document production and the Rule 2004 Examinations were moved to September 4, 2012 and September 17, 2012 respectively.  Complaint, No. 13-08044, dkt 1 at Exhibit C.  On August 7, 2012 Plaintiff served both Ms. Joseph and Debtors with the subpoena laying out which documents they needed to produce. No. 12-73024, dkt 33 at Exhibit C.  However Debtors produced no documents on September 4, 2012 and Ms. Joseph failed to respond to any follow up requests by Plaintiff.

Due to Debtors' failure to produce any documents, Plaintiff filed a motion to dismiss Debtors' case scheduled for October 15, 2012.  No. 12-73024, dkt 33.  In an attempt to give Debtors another opportunity to comply with the Discovery Order, Plaintiff agreed to move the hearing date to October 31, 2012.  Nonetheless, by the October 31 hearing, Debtors still had not produced any documents and the Rule 2004 examinations had not taken place.  In addition, Debtors and their attorney failed to appear at the October 31, 2002 hearing, the adjourned November 7 hearing, *and* the further adjourned December 5 hearing.  At the December 5, 2012 hearing, the Court directed that a letter be served on Debtors and their counsel directing them to appear at a hearing on January 30, 2013.  Just prior to that hearing, on January 29, 2013, Debtors delivered only some of the required documents to Plaintiff.  This prompted the Court at the January 30, 2013 hearing to direct Debtors to produce all of the documents in their possession,

provide a sworn response to that effect, and appear for the Rule 2004 examination within three weeks.

Debtors responded on February 15, 2013 by producing additional documents and objecting to thirteen of the items requested in the subpoenas.  However at no time did Debtors attempt to quash the subpoena or claim that the information was privileged.  At the next hearing, on February 27, 2013, the Court directed Debtors to produce all the subpoenaed documents, to file affidavits attesting that they had no additional documents in their possession, and to appear at the examinations on March 13 and March 14, 2013.  On March 12, 2013 Debtors filed a signed affidavit, dated March 3, 2013, (the "Affidavit") stating that the submitted documents were "the only requested documents in our possession and control" and that "[w]e have not destroyed any documents."  No. 12-73024, dkt 60.

<u>Rule 2004 Examinations</u>

On March 13 and March 14, 2013, Debtors were examined by Plaintiff (the "Rule 2004 Examinations") and each individual debtor identified documents that they possessed or could have acquired with minimal effort that were not provided to Plaintiff.  Mr. St. Clair Tr. 35-45, 131-151; Ms. St. Clair Tr. 73, 95-96, 126-127.  Specifically Mr. St. Clair had failed to disclose or provide: information on his employment as a law professor at Edgar Evers College; the specific details of his law practice, records for his phone, cable, and internet bills; and receipts for recent purchase from BJ and Costco.  Mr. St. Clair Tr. 35:20-43:9, 44:14-45:20, 131:16-25, 139:15-23 150:24-151:23.  In describing his law practice, Mr. St. Clair explained that he does not use a retainer agreement with clients and prefers to use letters of engagement.  *Id*. at 44:19-22.  In addition he failed to disclose that he had a website.

> Plaintiff:        Is [St. Clair and Associates] the business that you operate under?
> Mr. St. Clair:  It's the name that I operate under, yeah
> Plaintiff.        Is that your current website?
> Mr. St. Clair.  No, it's not. I don't know what that is
> Plaintiff.        Have you ever seen this [website] before?
> Mr. St. Clair.  No
> …
> Plaintiff:        And you don't currently use the website www.StClairlaw.Com?
> Mr. St. Clair:  No

*Id.* at 183:24-184:8; 185:8-10.

Ms. St. Clair failed to produce information about: her new accountant; her student loans; and household expenses. Ms. St. Clair Tr. 73:13-21; 95:8-16, 126:14-127:8.  In addition Debtors' Rule 2004 Examinations were contentious with Mr. St. Clair making repeated incendiary comments and rude gestures, and Ms. St. Clair passing notes during her examination.  Mr. St. Clair Tr. 272:18-19; 273:10; Ms. St. Clair Tr. 93:9-94:6.


April 3, 2013 Hearing

Following the Rule 2004 Examinations Plaintiff filed a supplemental affirmation to their earlier motion to dismiss alleging that Debtors had documents which they had not produced. Supplemental Affirmation in Support of Motion to Dismiss, No. 12-73024, dkt 63.  The Court held a hearing on April 3, 2013 where the Court questioned why all the documents were not produced.  At the hearing Ms. Joseph testified that she personally went over the list with Debtors and that they choose which documents to produce.

> Ms. Joseph: Your Honor, I went over with the debtor over and over with the list of documents –
> The Court: So the debtor lied to you?
> Ms. Joseph: Yes. Their explanation to me was that they didn't believe that they needed to show --

MTD Hr'g Tr. ("April 3 Hr'g") No.12-73024, dkt 74, 6:23-7:2. April 3, 2013

Ms. Joseph also represented to the Court that there were documents which were protected by attorney client privilege. *Id*. at 13:3-5. The Court then directed Debtors to file any previously unproduced documents by the end of the week and to produce a privilege log with respect to any documents that might be privileged. *Id*. at 13:13-15. The next hearing was scheduled for May 13, 2013.

May 13, 2013 Hearing

Before the May 13 hearing, Debtors delivered additional records but those records were also incomplete and did not include a privilege log. No. 12-73024, dkt 75. In response Plaintiff filed a motion for sanctions against Debtors. *Id*. At the May 13, 2013 hearing the Court questioned Mr. St. Clair and Ms. Joseph about why they had not complied with the subpoena, especially as it related to law firm documents. Mr. St. Clair changed his answer from his Rule 2004 Examination—where he stated that he used letters of engagement—and now claimed that he instead only wrote notes in the file as to how much he charges each client but did not keep any receipts or invoices. MTD Hr'g Tr. ("May 13 Hr'g") No. 12-73024, dkt 83 7:15-18; 15:2. May 13, 2013.

> Plaintiff: [H]ow do you, I guess record how much a debtor – the debtor legal fees is?
> Mr. St. Clair: A. I kind of just write it in a – the back of the file jacket.
> ….
> Plaintiff. Mr. St. Clair, isn't it true that you testified that you usually do letters of engagement when you have a client retain your services?
> Mr. St. Clair: No
> Plaintiff: … You didn't say those words during your deposition?
> Mr. St. Clair: If I did I must have misspoke…
> ….
> Mr. St. Clair: I normally don't retain receipts or invoices. As I indicated earlier, when a person pays me I deduct it. Sometimes a receipt or invoice is merely something I write on a scrap of paper.

*Id*. at 11:23-12:3; 12:17-25; 15:6-9.

Mr. St. Clair and Ms. Joseph also could not agree on whether there were any privileged

documents, with Mr. St. Clair claiming that he had not known he needed to produce them.

> Court: Are there any documents that are privileged?
> Ms. Joseph: No, your Honor. Not that we have in our possession, your Honor.
> …
> Court: [D]id you hear your counsel say that there are no privileged documents. Is she wrong?
> Mr. St. Clair: With all due respect your Honor, this is the first I've heard of any – ruling or any conclusion on whether or not my documents were privileged.

*Id.* at 6:19-21, 17:5-9.

The Court then granted sanctions against Debtors in the amount of $7,500.00 for failing

to comply with the Court's orders and for filing a false Affidavit (the "Sanction Order"). *Id.* at

22:23-23:11; No. 12-73024, dkt 79. The Court stated that:

> It's clear to me that the debtor has embarked on a process here which is designed to make as difficult as possible this discovery process. Now difficult and sanctions are two different things, but here the debtor I think has gone beyond what the Court deems as permissible.

May 13 Hr'g at 21:14-19.


Adversary Proceeding

On April 5, 2013 Plaintiff filed an adversary proceeding, No. 13-08044, to deny Debtors

their discharge. After the Court issued the Sanctions Order Plaintiff filed a motion for summary

judgment in the adversary proceeding arguing that the entry of the Sanction Order required, as a

matter of law, that Debtors' discharge be denied under 11 U.S.C. § 727. No. 13-08044, dkt 8.

At this point Debtors replaced Ms. Joseph as their counsel with Mr. Karamvir Dahiya ("Mr.

Dahiya"). No. 13-08044, dkt 16. The Court denied the summary judgment motion—while the

Sanctions Order did constitute a finding that Debtors had submitted a false affidavit and failed to

obey Court orders, it did not include findings of willful or fraudulent intent, a requirement under

the relevant subsections of § 727.  No. 13-08044, dkt 27. Plaintiff appealed and the District Court

affirmed the denial of summary judgment.  *Cadles of Grassy Meadows II, L.L.C. v. St. Clair (In*

*re St. Clair),* No. 13–mc–1057(SJF), 2014 WL 279850 (E.D.N.Y. Jan. 21, 2014).


Trial

On April 24, 2014 the Court held a trial on the adversary proceeding solely to determine

whether Debtors acted willfully and with fraudulent intent when they submitted a false Affidavit

and failed to comply with the Court's orders.  At the beginning of the trial Debtors objected to

the admissibility of Debtors' Rule 2004 Examination testimony as evidence.  For the purposes of

trial the Court accepted the Rule 2004 Examination testimony into evidence but asked for

supplemental papers on the narrow issue of whether the testimony was admissible.

At trial, Debtors testified that they made a "good faith effort" to collect all the documents

and that they provided those documents to their first lawyer Ms. Joseph.  Trial Tr. 21:2-13, April

24, 2014.  Debtors also argued that their failure to produce certain documents was due to either

mistakes made by Ms. Joseph or the destruction of those documents by super-storm Sandy.  *Id.*

at 61:21-22; 21:17-21.  Specifically Debtors contend that Ms. Joseph never clearly told them

which documents to produce, provided them with a copy of the subpoena, or indicated that the

documents submitted were insufficient.  *Id.* at 32:5-10; 78:23-79:25.

However, when questioned by counsel and the Court, Debtors admitted that they only

gave Ms. Joseph the documents they believed she was asking for and did not inform her that

additional documents might exist.

> Mr. St. Clair: I gave what I believed she was asking for. And when I submitted it to her,
> she didn't ask for anything further, so I relied on that.
> Court: Did you tell her you had other things?
> Mr. St. Clair: No, I gave her what I had –

> Court: How would she know she didn't get it all if you didn't tell her there were other things you weren't giving her?
> Mr. St. Clair: Because I would imagine she would compare what was given, as to what was being asked for.

*Id*. at 65:5-15.

In addition, Debtors admitted that they personally chose which documents to turn over based on a checklist of documents they possessed.

> Court: So you made the decision that the documents you didn't turn over were not called for?
> Ms. St. Clair: They were not on the list, exactly.
> Court: So that was your decision
> Ms. St. Clair: That was the decision from what was on the list, yes.

*Id*. at 86:6-11.

Debtors also testified that while they had previously represented that all documents had been

destroyed by the storm, in fact some had only been damaged, and Debtors discarded those that

were badly damaged.

> Court: But they asked you were all the records that you maintained down there destroyed, or were some salvageable. You said nothing was salvageable everything was destroyed.
> Mr. St. Clair: At that time that was my impression, Judge. And there were some things that were soaked that we were able to dry out.
> ….
> Court: I'm using your words, there were – nothing was salvageable, nothing?
> Mr. St. Clair: Well, then there was – then I stand by that, there was nothing salvageable because there was sewage on it. I was not – I didn't want to touch it; it was disgusting.
> Court: So you threw them out?
> Mr. St. Clair: I felt like I had no choice, we were in a crisis

*Id*. at 62:15-21; 63:10-17.

## DISCUSSION

### I.    ADMISSIBILITY OF RULE 2004 EXAMINATION TRANSCRIPTS AT TRIAL[2]

Debtors' transcripts from the Rule 2004 Examination constitute admissible evidence that were properly introduced at trial.  Debtors correctly state that the procedures and goal of a Rule 2004 examination differ and are broader than that of a deposition under the Federal Rules of Civil Procedure.  Rule 2004 examinations are utilized to "assist the trustee in revealing the nature and extent of the estate, ascertaining assets, and discovering whether any wrongdoing has occurred." *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005).  Unlike depositions, which under the Federal Rules of Evidence are a byproduct of litigation, Rule 2004 examinations are "a pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt." *Id.*  For these reasons courts have generally held that Rule 2004 deponents are not entitled to certain rights afforded automatically under the Federal Rules such as the right to counsel, the ability to object, and the right to cross-examine the deponent. *In re GHR Energy Corp*, 33 B.R. 452, 454 (Bankr. D.Mass 1983).

While these differences are significant, numerous courts addressing this issue have upheld the admission of Rule 2004 examination testimony at trial in an adversary proceeding. *See Longo v. McLaren (In re McLaren),* 3 F.3d 958, 964-65 (6th Cir. 1993) (Court held that "2004 examinations have repeatedly been admitted into evidence…"); *AT&T Universal Card Services Corp. v. Aguero (In re Aguero)*, No. 96–14256–SSM, 96–1326 1997 WL 633276, at *4 n.4 (Bankr. E.D.V.A. September 16, 1997) (Rule 2004 testimony is admissible at trial since "the

---

[2]    Debtors' counsel never objected to the use of the Rule 2004 Examination testimony at pre-trial conference or its inclusion in the joint pre-trial memorandum. However, since the issue was raised at trial the Court will address it.

court is aware of no other authority that would so restrict the use of the Rule 2004 transcript");

*First National Bank v. Syrtveit*, 105 B.R. 596 (Bankr. D.Mont. 1989) (Court accepted use of Rule

2004 examination testimony at trial).

In this case the Rule 2004 Examinations were properly employed as a pre-litigation

device whereby Plaintiff sought to determine whether any wrong-doing had actually occurred.

Further there was no prejudice to Debtors at either the Rule 2004 Examinations or at trial.  At the

Rule 2004 Examinations Debtors were represented by counsel who was active and engaged.  The

examinations were done under oath, transcribed by a court reporter with sufficient opportunity

for Debtors to object,[3] and Debtors admitted that the transcript was accurate (Trial Tr. 10:6-

10:12).  At trial both Debtors were able to testify and their counsel was given ample opportunity

and leeway to "cross-examine" them about issues that were not raised or germane to the Rule

2004 Examination.[4]  Due to these factors the Court finds that the Rule 2004 Examination

testimony is admissible and was properly introduced into evidence at trial.


## II.    DENIAL OF DISCHARGE PURSUANT TO § 727(A)

At trial Plaintiff focused on Count 1 (§ 727(a)(4)(A)) and Count IV (§ 727(a)(6)(A)) of

the Complaint.  Denial of discharge is warranted whenever any of § 727(a)'s subsections can be

proved. 11 U.S.C. § 727(a), (b); *Martin v. Key Bank, N.A. (In re Martin),* 208 B.R. 799, 805

(N.D.N.Y. 1997).  As § 727(a) imposes "an extreme penalty for wrongdoing," it "must be strictly

construed against those who object to the debtor's discharge and liberally in favor of the

bankrupt."  *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1310 (2d Cir.

---

[3]    At trial Debtors also raised the issue that the transcripts were not certified copies, however Debtors waived this issue by not raising it at the pre-trial conference.
[4]    Court: I'm going to give him a little leeway, because the real issue, if not the only issue, that we have today is the intent of the parties. Trial Tr. 17:20-17:22

1996) (internal quotation marks omitted) (citing *Bank of Pennsylvania v. Adlman (In re Adlman),* 541 F.2d 999, 1003 (2d Cir. 1976)). When a plaintiff objects to a debtor's discharge, the standard of proof is preponderance of the evidence, and the burden of persuasion always lies with the plaintiff. Fed. R. Bankr.P. 4005; *Republic Credit Corp. I. v. Boyer (In re Boyer),* 328 Fed. Appx. 711, 714 (2d Cir. 2009). The facts sustaining an objection "must be real and substantial." *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987) (internal quotation marks omitted) (citing *Dilworth v. Boothe,* 69 F.2d 621, 624 (5th Cir. 1934)). Applying these standards to the evidence presented at trial this Court finds that Plaintiff has sustained its burden as to the objections raised in §§ 727(a)(4)(A) and (a)(6)(A).

### A. *False Oaths and Accounts: § 727(a)(4)(A)*

#### (i)      *Legal Standard for Denial of Discharge Pursuant to § 727(a)(4)(A)*

Pursuant to § 727(a)(4)(A):

The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account.

Under this section Plaintiff must prove five elements by a preponderance of the evidence: (1) "the debtor made a statement under oath"; (2) "the statement was false"; (3) "the statement related materially to the bankruptcy case"; (4) "the debtor knew the statement was false"; and (5) "the debtor made the statement with fraudulent intent." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky),* 244 B.R. 560, 572 (E.D.N.Y. 2000); *accord Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000).

The "wilful intent to defraud is a crucial element of the cause of action*." Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 694 (E.D.N.Y. 2014) (*quoting Perniciaro v. Natale (In re*

*Natale*), 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992)).  The burden of proving actual fraudulent intent lies with the party objecting to the debtor's discharge. *Pergament v. Smorto (In re Smorto),* No. 07–CV–2727 (JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008).  Fraudulent intent can be demonstrated by either (1) evidence of a debtor's actual intent to deceive; *or* (2) indicia of his reckless indifference to the truth.  *Adler v. Lisa Ng and Charming Trading Co. (In re Adler),* 395 B.R. 827, 843 (E.D.N.Y. 2008); *Sholdra v. Chilmark Fin. LLP (In re Sholdra),* 249 F.3d 380, 383 (5th Cir. 2001), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 619, 151 L.Ed.2d 541 (2001).

Proof of "an actual intent to deceive"—the first means of proving fraudulent intent —can be established through "badges of fraud."  *Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir. 1983).  These badges of fraud include concealing proceeds, transferring property to family members, the lack or inadequacy of consideration, the general chronology of the events of transactions in question, and the concealing of relevant facts.  *Id*. at 1582-83.  Courts have held that "[w]here there has been a 'pattern' of falsity, or a 'cumulative effect' of falsehoods, a court may find that [fraudulent] intent has been established"  *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D.Conn. 1993)(citations omitted).

The second means of proving fraudulent intent—"reckless indifference to the truth" or "a cavalier disregard of the truth"—is unique to § 727(a)(4)(A).  *Stamat v. Neary,* 635 F.3d 974, 982 (7th Cir. 2011); *Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009).  Since a debtor will "rarely admit actual intent to defraud creditors… fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct." *In re Dubrowsky*, 244 B.R. at 572-73.  To prove intent under this reckless disregard standard, courts consider the following three non-exclusive factors: (a) "the serious nature of the information sought and the necessary attention to detail and accuracy in answering," *Wisell v. Wisell (In re*

*Wisell),* No. 2:06–CV–167–WKS, 2007 WL 2463268, at *2 (D.Vt. Aug. 28, 2007) (internal

quotation marks omitted) (citing *Sanderson v. Ptasinski (In re Ptasinski),* 290 B.R. 16, 22–23

(Bankr. W.D.N.Y. 2003)); (b) a debtor's "lack of financial sophistication" as evidenced by his or

her professional background, *Pergament v. Derise (In re Derise),* No. 07–CV–3083 (JFB), 2008

WL 850253, at *9 (E.D.N.Y. Mar. 27, 2008); and (c) whether a debtor repeatedly blamed

recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct

inconsistencies.  *See Cadle Co. v. Mitchell (In re Mitchell),* 102 Fed.Appx. 860, 862–63, 863 n.3

(5th Cir. 2004).

　　While "'courts may consider the debtor's education, business experience, and reliance on

counsel when evaluating the debtor's knowledge of a false statement, [] the debtor is not

exonerated by pleading that he or she relied on patently improper advice of counsel.'" *Wachovia*

*Bank, N.A. v. Spitko (In re Spitko),* 357 B.R. 272, 313 (Bankr. E.D.Pa. 2006) (quoting *In re*

*Maletta,* 159 B.R. 108, 112 (Bankr. D.Conn. 1993)).  Indeed advice of counsel is "not an

impenetrable shield behind which [a debtor] may continually hide." *In re Dubrowsky,* 244 B.R.at

575.

　　Finally "once the objecting creditor has produced persuasive evidence of a false

statement, the burden shifts to the debtor to come forward with evidence to prove that it was not

an intentional misrepresentation." *Pereira v. Gardner (In re Gardner),* 384 B.R. 654, 662–63

(Bankr. S.D.N.Y. 2008) (citing *Baron v. Klutchko (In re Klutchko),* 338 B.R. 554, 567 (Bankr.

S.D.N.Y. 2005)).

　　　　　　　*(ii)    Analysis*

　　The Court has already found that Debtors violated the first three required prongs under §

727(a)(4)(A).  The Court, through its Sanction Order, found that the Affidavit submitted by

Debtors is false.[5]  This Affidavit constitutes a "statement under oath" and its accuracy, or lack thereof, is material and vital to the bankruptcy case.  Thus the only issue at dispute, and the subject of the trial, is whether Debtors acted with fraudulent intent when they submitted the Affidavit.  In this case, Debtors' conduct, actions, and testimony—both before and during trial— demonstrate a "pattern of falsity" and a "reckless indifference to the truth" indicative of fraudulent intent.

In order to determine fraudulent intent the Court looks to Debtors' "whole pattern of conduct." *Fangio v. Russell (In re Russell)*, 507 B.R. 786, 794 (Bankr. N.D.N.Y. 2014) (citations omitted).  This requires an analysis of Debtors' actions before trial as fraudulent intent can be found "where the debtor's conduct was evasive or persistently uncooperative."  *Pereira v. Young (In re Young),* 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006).  From the beginning of this case Debtors have engaged in a pattern of delay and obfuscation with the sole intention of turning over as few documents as possible.  Debtors missed deadlines, engaged in last minute requests for more time, and—along with their lawyer—failed to appear at hearings in October, November, *and* December 2012. Although the original date for document production and the Rule 2004 Examinations was August 2012 Debtors did not perform either activity until March of 2013, over eight months later and only after they were threatened with sanctions.  Even then, Debtors failed to turn over numerous documents including any information about Mr. St. Clair's work at Medgar Evers College or his law practice.  As this Court explained at the May 13 hearing these actions moved beyond simple delay into pure obstruction of the discovery process.

---

[5]     "[T]he debtors have … (ii) made false and fraudulent representation to the Court on the record and by the filing of an affidavit, sworn to on March 3, 2013, that they had no further documents in their possession and/or control other than what was previously turned over to Cadles' counsel."  Sanction Order, No. 12-73024, dkt 79

In addition, Debtors' statements—both before and during trial—involved numerous contradictory representations, constant misdirection, and outright falsehoods which not only evidenced fraudulent intent, but damaged Debtors' credibility, a key factor when determining whether a discharge under Section 727 should be denied. *See Steibel v. Bressler (In re Bressler),* No. 06–11897(AJG), 2008 WL 686810, at *13 (Bankr. S.D.N.Y. Mar. 10, 2008) ("In determining whether a discharge should be denied under Section 727(a)(4)(A), [Debtor's] credibility at the hearing will also bear on the Court's decision."). For example, Mr. St. Clair originally told Plaintiff that he uses letters of engagement with clients but later represented to the Court that he "misspoke" and that he actually just writes notes in a file but keeps no copies of these notes. Further at the May 13 hearing Mr. St. Clair and his counsel could not even agree if there was a privilege log or if there were any privileged documents. Mr. St. Clair also incorrectly told Plaintiff at his 2004 Examination that his law firm did not have a website, even after Plaintiff showed him a website under his name with his contact information.

Debtors presented no credible evidence or justification at trial to explain why they submitted a false Affidavit, instead they offer excuses riddled with inconsistences and implausible statements   Debtors' first argument is that any blame belongs to their previous lawyer for failing to properly advise them on what documents to produce. However Debtors statements at the April 3rd and May 13th hearings, and at trial, belie this argument. While courts can consider whether a debtor improperly relied on counsel, such advice is "not an impenetrable shield." *In re Dubrowsky,* 244 B.R.at 553. In fact Plaintiff's subpoena, which was sent directly to Debtors, included a detailed list of which documents needed to be turned over.[6] Even if

---

[6]    The subpoena stated that, among other things, all records of: the parties' bank accounts, employment and payment information, clients or customers, tax returns, and financial statements needed to be produced.

Debtors somehow did not receive the subpoena there is no evidence that Ms. Joseph did not properly inform Mr. and Mrs. St. Clair about it and thus Debtors are assumed to have proper knowledge. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney")(internal citations omitted).

In addition Debtors' original counsel testified at the April 3rd hearing that she personally went over the document list with Debtors and that Debtors choose which documents to produce. This was corroborated at trial, when Debtors admitted that they only gave Ms. Joseph "what they believed she was asking for" without telling her what other documents or information they possessed.  Since Debtors withheld information from Ms. Joseph they cannot now claim that she failed to properly advise them. *See Herchakowski v. Herchakowski*, (*In re Herchakowski*), No. ADV 11-1679, 2013 WL 620291, at *4 (Bankr. D.N.J. Feb. 19, 2013) *supplemented*, No. 10-49287, 2013 WL 1867991 (Bankr. D.N.J. Apr. 29, 2013) ("The good faith reliance defense requires full disclosure of all relevant facts to the attorney, and reasonable advice from counsel"). Thus the decision of which documents to produce, and its consequences, is Debtors' alone. It is especially egregious that in this case Mr. St. Clair, an attorney, has attempted to lay the blame for his and his wife's improper and willful conduct at the feet of their attorney when it is clear that it is Debtors who are responsible for the position in which they find themselves.

Debtors' alternative argument that the documents were not submitted because they were destroyed by super-storm Sandy is also specious. While the storm did enormous damage and caused extreme hardships for many people in this area, Debtors' attempt to use the storm as an excuse is not credible.  First, the original subpoena was served in August of 2012, while super-storm Sandy did not occur until the end of October.  Thus there was ample time for Debtors to

comply with the subpoena before the purported destruction of all of Debtor's documents related to his law practice.  Second, Mr. St. Clair admitted that although he originally indicated that all of the records from his law practice were destroyed, this was false.  In fact many of the documents were only merely damaged by water or sewage and it was Debtors unilateral decision to "destroy" those documents by discarding them.  It is impossible to know whether in fact these documents needed to be discarded and the Court, having witnessed Debtors' conduct during the course of this case, ascribes little credibility to Debtors proffered excuses.  The destruction of such documents, combined with Debtors other actions, provides further evidence of a fraudulent intention to hide information.

Furthermore, Mr. St. Clair's, and to a lesser extent Ms. St. Clair's, disrespectful conduct during the Rule 2004 Examination must factor in to the Court's analysis.  "[B]ad faith may be found, not only in the actions that led to the lawsuit but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15 (1973)(citations omitted).   At two separate points during the Rule 2004 Examinations Mr. St. Clair engaged in derogatory name calling at Plaintiff's expense.  Mr. St. Clair Tr. 272:18-19; 273:10.  In addition Mr. St. Clair repeatedly gave Plaintiff "the finger" while yelling that "he did not need to be here."  *Id*. at 273:16-20; 274:5-7.  Mr. St. Clair and Ms. St. Clair also exchanged numerous notes during the Rule 2004 Examinations even after Plaintiff requested that they stop.  Ms. St. Clair Tr. 93:9-94:6.  Debtors' explanation that they were frustrated with the process, while understandable, is not an excuse.

When examining the totality of the actions of Debtors, the Court finds that each individually has exhibited the requisite fraudulent intent to satisfy the requirements of § 727(a)(4).  Both Debtors through their consistent delay in discovery, inconsistent statements as to why certain documents were not turned over, and blatant misrepresentations demonstrate a

"pattern of falsity" and a "reckless indifference to the truth."  Debtors' constant

misrepresentations to this Court about whether there were or were not retainer agreements,

whether any documents were or were not privileged, why documents were not turned over, or

even if there is or is not a website eliminate any credibility Debtors might have otherwise

possessed.  Further, when the Court considers the education and sophistication of Debtors—Mr.

St. Clair is himself a lawyer, and his wife is a physician assistant—it becomes even more

improbable that they were simply unaware of what documents to produce.  *See In re Spitko*, 357

B.R. at 313 (quoting *In re Maletta,* 159 B.R. 108, 112 (Bankr. D.Conn. 1993)) ("Courts may

consider the debtor's education, business experience, and reliance on counsel when evaluating

the debtor's knowledge of a false statement…").

Therefore, Plaintiff has proven by a preponderance of the evidence that Debtors acted

with fraudulent intent when they submitted a false Affidavit.


### B.  Refusal to Comply with a Lawful Order  § 727(a)(6)(A)

### (i)    Legal Standard for Denial of Discharge Pursuant to § 727(a)(6)

Pursuant to Section 727(a)(6)(A)

The court shall grant the debtor a discharge, unless—

(6) the debtor has refused, in the case—
(A) to obey any lawful order of the court, other than an order to respond to a material
question or to testify.

However whether to deny a debtor's discharge under this subsection is subject to the discretion

of the court.  *Weiss v. Winkler,* No. 98–CV–5742, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30,

2001).  Under § 727(a)(6)(A), a plaintiff must prove that the court issued an order and that the

debtor refused to obey that order.  *Hirsch v. Hirsch*, (*In re Hirsch),* Adv. Pro. No. 07–01139–

dem, 2009 WL 3297278, at *6 (Bankr. E.D.N.Y. Oct. 13, 2009).  However, "the word 'refused' requires more than a technical violation of a court order."  *Adar 990 Realty LLC v. Sofer (In re Sofer)*, 519 B.R. 28, 35 (Bankr. E.D.N.Y. 2014).  The court should consider (1) the detriment to the proceedings verses the harm to the debtor; (2) the intent behind the act such as whether they were willful or there was a justifiable excuse; (3) the injury to the creditors; (4) and whether the debtor could make amends.  *In re Kokoszka*, 479 F.2d 990, 997-98 (2d Cir. 1973) *aff'd sub nom. Kokoszka v. Belford*, 417 U.S. 642, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974).

   *(ii) Analysis*

  The Court has already held, through the Sanction Order, that Debtors violated numerous Court orders during discovery.[7]  Thus the only remaining issue, and the only issue addressed at trial, is whether Debtors' failure to comply was a willful act and whether there was a justifiable excuse.

  As explained in more detail above, Debtors' actions were willful and evidenced a desire to avoid turning over certain documents to Plaintiff.  From the beginning, Debtors' pattern of obstruction—missing deadlines, asking for additional time at the last second, and failing to appear at court hearings—had the detrimental effect of prolonging the case.  Debtors' failure to obey the Discovery Order took many forms but the most notable was the failure by Mr. St. Clair to produce *any* records or documents from his law firm as well as information about his second job as a professor at Medgar Evers College.  In addition Ms. St. Clair did not turn over promised documents such as the name of her accountant, her loan documents, or receipts detailing the

---

[7]  The Sanction Order reads: "[T]he debtors have failed to comply with this Court's Order, dated June 26, 2012, the Subpoenas dated August 6, 2012, as well as Orders issued from the bench thereafter on November 7, 2012, January 30, 2013, February 27, 2013 and April 3, 2013."  No. 12-73024, dkt 79.

household's monthly expenses. The failure to produce these documents had a significant detrimental effect on Plaintiff's ability to asses Debtors' income and assets.

At trial Debtors had no justifiable excuse for these transgressions, claiming that the records were either destroyed by the storm, they were unaware what documents to turn over, or that they had already given their lawyer everything. As explained above these excuses are specious. Debtors admitted that not all the documents were destroyed by the storm with some being merely "damaged." Debtors also acknowledged that they personally went through their files to decide which documents to produce. Furthermore, they purposefully did not tell their lawyer about all the documents in their possession, preventing her from being able to provide effective counsel. Further, Debtors have never made any attempt to make amends or remedy the situation. As of trial none of the missing information had been provided.

Therefore, Debtors acted willfully in ignoring the Court's orders.


## CONCLUSION

For all of the forgoing reasons, the Court will deny Debtors' discharge pursuant to §§ 727(a)(4)(A) and 727(a)(6)(A).

The Court will enter a judgment consistent with this Decision.


Dated: Central Islip, New York                    _/s/ **Robert E. Grossman** _____

July 7, 2015                                                    Hon. Robert E. Grossman, U.S.B.J.